In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, as Superintendent of Insurance, Respondent, for an Order to Take Possession of the Property of the RUSSIAN REINSURANCE COMPANY OF PETROGRAD, RUSSIA, Appellant.

In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by JAMES A. BEHA, as Superintendent of Insurance, Respondent, for an Order to Take Possession of the Property of the FIRST RUSSIAN INSURANCE COMPANY, ESTABLISHED IN 1827, Appellant.

G. FRANK DOUGHERTY et al., Appellants.

(Argued January 5, 1931; decided February 10, 1931.)

*Frederick B. Campbell* and *Paul C. Whipp* for Russian Reinsurance Company et al., appellants. The indefinite stay granted by the adoption of the Superintendent's so-called plan and the future disposition of the surplus funds by the court below, is contrary to the law and to article 1, section 6, of the State Constitution. (*Matter of Second Russian Ins. Co.* [*Hamburg Ins. Co.*], 244 N. Y. 606; *Matter of Second Russian Ins. Co.*, 250 N. Y. 449; *Sliosberg* v. *N. Y. Life Ins. Co.*, 217 App. Div. 67; 244 N. Y. 482; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149;

*Matter of People* [*Second Russian Ins. Co.*], 244 N. Y. 606; *James* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *Sokoloff* v. *National City Bank*, 239 N. Y. 158; *First Russian Ins. Co.* v. *Beha*, 240 N. Y. 601.) The status of the Superintendent of Insurance is not that of a trustee of a trust, either express or implied, but is that of a receiver of property in the possession of the court, an agent of the court; his sole remaining duty is to hold the funds safely until he is directed by the court how to dispose of them. (*Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149; Insurance Law, § 63, subd. 5; *Matter of People* [*First Russian Ins. Co.*], 253 N. Y. 365; *Acken* v. *Coughlin*, 103 App. Div. 1; *Sands* v. *Greeley & Co.*, 88 Fed. Rep. 130; *Drury* v. *Doherty*, 127 Misc. Rep. 263; *Matter of Northern Ins. Co.*, 223 App. Div. 870.) The companies, acting by at least a quorum of their directors, are entitled to these surplus funds which should be returned to them forthwith without the necessity of going through the form and delay of a trial. (*Petrogradsky M. K. Bank* v. *Nat. City Bank*, 253 N. Y. 23; *Matter of City Equitable Ins. Co.*, 238 N. Y. 147; *Matter of Norske Lloyd Ins. Co.*, 242 N. Y. 148; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149.) Our courts should not undertake to liquidate a foreign insurance corporation or to dispose of its assets here to creditors other than those protected by the statutory deposits or by valid attachments obtained prior to the liquidation order. (Insurance Law, § 63, subd. 5; *Matter of City Equitable Ins. Co.*, 238 N. Y. 147; *Matter of Norske Lloyd Ins. Co.*, 242 N. Y. 148; *Petrogradsky M. K. Bank* v. *Nat. City Bank*, 253 N. Y. 23.)

*Walter H. Pollak* and *Ruth I. Wilson* for G. Frank Dougherty, appellant. The plan wholly fails of its purpose. It does not provide for the payment of the foreign claims that have been filed with the liquidator either by suit or in this proceeding. Under this plan the Super-

intendent's possession becomes merely an obstacle to the collection of claims of this class. (*Matter of Second Russian Ins. Co.*, 244 N. Y. 607; *Murphy* v. *Second Russian Ins. Co.*, 240 N. Y. 554.) This plan merely hinders• and delays the foreign creditors of a solvent corporation and violates section 63 of the Insurance Law. (*Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147; *Graham* v. *Railroad Co.*, 102 U. S. 148; *Matter of People* [*Second Russian Ins. Co.*], 244 N. Y. 606; *Abrahams* v. *Beneke*, 155 App. Div. 525; *Schloss* v. *Schloss*, 14 App. Div. 333; *Matter of Thompson*, 10 App. Div. 40; *Chautauqua Citizens' State Bank* v. *First Nat. Bank*, 98 Kan. 109; *National Surety Co.* v. *Graves*, 211 Ala. 533; *Brooks* v. *Smith*, 290 Fed. Rep. 33.) The Superintendent of Insurance should be directed to allow and pay all claims whose validity has been established, without regard to classification. (*Matter of Norske Lloyd Ins. Co.*, 242 N. Y. 167; 249 N. Y. 146; *Sands* v. *Greeley & Co.*, 88 Fed. Rep. 130; *Pfahler* v. *McCrum-Howell Co.*, 197 Fed. Rep. 684; *Brooks* v. *Smith*, 290 Fed. Rep. 39; *Matter of Second Russian Ins. Co.*, 244 N. Y. 607; *Culver Lumber & Mfg. Co.* v. *Culver*, 81 Ark. 102; *Horton* v. *McNally Co.*, 155 App. Div. 322; *Low* v. *R. P. K. Pressed Metal Co.*, 91 Conn. 91; *Barley* v. *Gittings*, 15 App. D. C. 427.)

ǀ*Borris M. Komar* for James A. Tillman, appellant.

*James F. Donnelly, Alfred C. Bennett, John M. Downes* and *Clarence C. Fowler* for respondent. Present retention of these surplus funds by the Superintendent of Insurance until recognition by the United States of a stable government in Russia is the only feasible and lawful policy for the courts of this State to adopt. (*Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149; *Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147; *Matter of Stoddard* [*Norske-Lloyd Ins. Co.*], 242 N. Y. 148; *Matter of People* [*Second Russian Ins. Co.*], 219 App. Div. 46; 244 N. Y.

606; 224 App. Div. 105; 249 N. Y. 538; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149; *First Russian Ins. Co.* v. *Beha*, 240 N. Y. 601; *Matter of Werenjchik*, 229 App. Div. 36; *Banque de France* v. *Equitable Trust Co.*, 33 Fed. Rep. [2d] 202; *United States* v. *Percheman*, 7 Pet. 51; *Hamilton* v. *Erie R. R. Co.*, 219 N. Y. 343; *Hauenstein* v. *Lynham*, 100 U. S. 483; *Matter of Cooper*, 143 U. S. 472; *Techt* v. *Hughes*, 229 N. Y. 222; 254 U. S. 643; *Goos* v. *Brocks*, 223 N. W. Rep. 13; *Society for Propagation of the Gospel* v. *New Haven*, 8 Wheat. [U. S.] 464; *Jordan* v. *Tashior*, 278 U. S. 123; *Whitney* v. *Robertson*, 124 U. S. 190; *Chew Heong* v. *United States*, 112 U. S. 536; *Clarke* v. *Clarke*, 178 U. S. 186; *De Vaughn* v. *Hutchinson*, 165 U. S. 566; *Chirac* v. *Chirac*, 2 Wheat. 257; *Levy* v. *McCartee*, 6 Pet. 102; *Foster & Elam* v. *Neilson*, 2 Pet. 253.) The surplus funds should not be transmitted to the directors at the present time. (*Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; *Russian Reinsurance* v. *Stoddard*, 240 N. Y. 149; *Severnoe Securities Co.* v. *Westminster Bank*, 214 App. Div. 14; *Spallholz* v. *Sheldon*, 216 N. Y. 205; *Treadwell* v. *Clark*, 190 N. Y. 51; *Sokoloff* v. *National City Bank*, 239 N. Y. 158; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149; *Higgins* v. *Central New England R. R. Co.*, 155 Mass. 176.)

*John J. Bennett, Jr., Attorney-General (Joseph C. H. Flynn* of counsel), for the State of New York. The domiciliary receiver cannot take down these surplus funds nor can the liquidator pay the second and third class creditors with them. (*Matter of City Equitable Ins. Co.*, 238 N. Y. 147; *Matter of Norske Lloyd Ins. Co.*, 242 N. Y. 148; *James* v. *Second Russian Ins. Co.*, 239 N. Y. 248; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149; The surplus funds cannot be paid to the surviving directors. (*Andre* v. *Beha*, 211 App. Div. 380; 240 N. Y. 605; *Russian Reinsurance Co.* v. *Stoddard*, 240 N. Y. 149;

*Matter of Second Russian Ins. Co.*, 225 App. Div. 92; 250 N. Y. 449; *Severnoe Securities Corp.* v. *Westminster Bank*, 214 App. Div. 14; *Petrogradsky M. K. Bank* v. *National City Bank*, 223 N. Y. 23.)

CARDOZO, Ch. J.   The appellants, " Russian Reinsurance Company of Petrograd, Russia," and ", First Russian Insurance Company, Established in 1827," are corporations organized under the laws of the Russian Empire, with agencies or branches in the State of New York.

In August, 1925, the Superintendent of Insurance took possession of the assets of these branches in accordance with section 63 of the Insurance Law of the State (Cons. Laws, ch. 28) to conserve them for the benefit of those entitled thereto.   This action was taken in view of the hazards and embarrassments growing out of the confiscatory decrees of the Russian Soviet Republic, and not because of insolvency either present or imminent.

The liquidator was protected in the unimpeded liquidation of the assets by an injunction, sweeping in its generality, whereby creditors were restrained from pursuing their legal remedies by attachment or execution against the assets so sequestered, and even, it seems, from proceeding to trial (*Matter of People* [*Second Russian Ins. Co.*], 244 N. Y. 606).

The liquidation is now finished.   The domestic creditors and policyholders have been paid (*Matter of People* [*Norske Lloyd Ins. Co., Ltd.*], 242 N. Y. 148).   Paid also have been the creditors, whether foreign or domestic, who acquired liens by attachment before liquidation was begun (cf. *Matter of People* [*First Russian Ins. Co.*], 253 N. Y. 365).   The Superintendent holds in his hands a surplus of nearly a million dollars for the one company and of more than a million for the other.   The question is what disposition he shall make of it.

Creditors and policyholders with claims arising out of foreign business insist that the time has now come when

their claims should be enforcible. Either the liquidator of the domestic branch should pay them, or if that remedy be denied, they should be relieved from the injunction which stays the remedy by suit. The insurance companies insist that they are still juristic persons, that they are represented by boards of directors resident in Paris and competent to act, and that subject to the remedies of creditors they are entitled to possession. No conflict of any moment exists between the position of the creditors on the one hand and that of the companies on the other, since the fact is not disputed that the liabilities are few and that a surplus will be left after all of them are paid.

Opposed, however, to the position of the creditors and the companies is the position of the Superintendent of Insurance, the statutory liquidator. He takes the ground that in view of the hazards and uncertainties of the Russian situation, the surplus should not be paid to any one, but should be left in his hands indefinitely, until a government recognized by the United States shall function in the territory of what was once the Russian Empire. In the meantime creditors as well as companies must be told to stand aside.

The Appellate Division has upheld the contention of the Superintendent, and has entered a decree accordingly. It did not solve the problem. It adjourned it *sine die.* By the terms of its decree the so-called plan of the Superintendent of Insurance " with reference to the distribution or disposition of the surplus " is " in all respects adopted." The surplus funds are to " be retained * * * until a government in Russia is recognized by the United States or until the surplus funds may be transmitted to a liquidator or legal representative of the corporation at the domicile abroad [*i. e.*, in Russia] or in accordance with any provision of a treaty of the United States." In the meantime the injunction is to be continued in all its rigor.

We are unable to accept the view that postponement to the Greek Kalends is the fitting answer to a prayer that the court unlock the fund and formulate a plan of release and distribution.

So far as creditors are concerned, the injustice of the plan is obvious, if plan it may be called. The Superintendent took possession for the benefit of domestic creditors whose claims have now been paid. Other creditors, stayed from suing while the liquidation was in progress, have asked the courts to say that their day has now arrived. The answer is "not yet." The court, they have been told, will neither pay them through a liquidator nor lift the injunction restraining other remedies nor even restore the surplus to the possession of the debtor. Liquidation is over, and there has been a fulfillment of the trust for which possession was assumed. Even so, the creditors not within the trust are to be stayed indefinitely and perhaps forever from the pursuit of any remedy, either in equity or at law. We may doubt whether an injunction so unmeasured is consistent with constitutional immunities, and, in particular, with the privilege of access to the courts (*Sliosberg* v. *New York Life Ins. Co.*, 244 N. Y. 482; *Truax* v. *Corrigan*, 257 U. S. 312, 334). What cannot be doubted with reason is its hardship and inequity. In the silence of the statute, a decree instructing the liquidator as to the administration of the surplus must conform to the exactions of equity and justice.

Holding as we do that the surplus must be made available for the payment of creditors and policyholders with claims founded upon foreign business, there remains the question of the remedy. Shall creditors be permitted to prove their claims with the Superintendent and to receive payment at his hands, or shall the order go no farther than to remove the bar of the injunction, and permit the prosecution of suits, with or without attachments, by the usual remedies at law? With exceptions presently

to be noted, we think the latter course should be followed, the corporations being solvent and the danger being thus removed that the pursuit of legal remedies will result in waste or inequality. The Superintendent of Insurance has fulfilled the statutory trust when he has paid the domestic creditors and policyholders for whom the trust was laid upon him. It is no part of his duty to ascertain the validity of the claims that will be paid out of the surplus unless inequity would be done if the claimants were remitted to a remedy at law. An exception must indeed be recognized where attachments or executions were levied before the date of liquidation. These liens remained in force when the assets were transferred into the possession of the liquidator, and by order or agreement were to be ascertained and paid by him as a measure fairly incidental to the administration of the trust (*Matter of People [First Russian Ins. Co.]*, 253 N. Y. 365). An exception also must be recognized where proofs of claim were filed and diligently pressed while the Superintendent was still in charge and the injunction still in force. The creditors so proving were acting in response to a published invitation, published in accordance with the order of liquidation, to submit claims of every kind without reference to the place of origin, and were stayed in the meantime from a remedy in the courts. There would be manifest inequity if at this late day an ancillary receiver were to remit them to their legal remedies and thus compel them to prove anew (cf. *Sands* v. *Greely & Co.*, 88 Fed. Rep. 130, 133; *Culver Lumber & Mfg. Co.* v. *Culver*, 81 Ark. 102; and see 44 Harvard Law Review, pp. 437–442, collating the decisions). A court of equity, when once it has assumed control over a fund, may grant relief that " would otherwise be beyond the scope of its authority " (*McGean* v. *Metropolitan Elevated Ry. Co.*, 133 N. Y. 9, 17), if justice so requires. A different situation would be here if the corporation were insolvent with the result that payment by the liquidator of claims already filed might work a preference with relation

to claims not yet submitted (*Matter of People* [*Norske Lloyd Ins. Co.*], *supra*).

The exceptions, not improbably, will come near to eating up the rule, for the record makes it doubtful where any claims, not yet submitted, will be forthcoming in the future. This we cannot know till the injunction is released. We think, however, that the liquidator will discharge the full measure of his duty when he shall have made provision for the payment of claims already filed. We find no adequate ground for the extension of the duty to claims of later date, an extension that might result in an indefinite prolongation of the term of liquidation. If such claims are in dispute the courts will be open to the disputants when the injunction is removed. The claimants like other suitors must adjust their controversies there.

The fund being thus subjected to the remedies of creditors, the question must still be answered how the surplus is to be disposed of after such claims have been allowed. We think the surplus then remaining should be paid to the corporations, represented by directors, a quorum of the board.

By section 63 of the statute (Insurance Law; Cons. Laws, ch. 28) the right and duties of the Superintendent of Insurance when acting as a liquidator are those " heretofore exercised by and imposed upon ancillary receivers of foreign corporations in this state " (subd. 5). An ancillary receiver presupposes in most instances a receiver at the domicile (*Matter of People* [*City Equitable Fire Ins. Co.*], 238 N. Y. 147). Very commonly it betokens insolvency as well. Distribution must then be made in submission to the principle that equality is equity (*Matter of People* [*City Equitable Fire Ins. Co.*], *supra*). Conditions are different in the case before us. There is no receiver at the domicile, and the corporations are still solvent, willing, as well as able, to pay their creditors in full. In such circumstances, the duty of the Superintendent is to pay

the surplus to the legal owners, deducting a sum sufficient to cover his own expenses as well as intervening liens.

Our decision in *Russian Reinsurance Co.* v. *Stoddard* (240 N. Y. 149) is not a ruling to the contrary. The ruling there was that a court of equity will not decree the payment of a fund in the hands of a trustee where payment if made will bring exposure to a double liability (cf. *Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23, 28). The trustee then before us was engaged in business in many countries, and in some of them the decrees of the Soviet Republic were recognized as law. On the other hand, in the same volume of the reports, we find the record of a case where a corporation exiled from Russia was awarded payment at the hands of the Superintendent of Insurance (*First Russian Ins. Co.* v. *Beha*, 240 N. Y. 601). " The defendant," we said, " holds the property and is sued as an officer of the State and there is no danger of recovery against him in another jurisdiction." Between that case and this no distinction is perceived, and surely none that is substantial.

The present state of the law in respect of these Russian corporations driven from their domicile and there subjected to decrees of confiscation and extinction has been expounded with a full review of the decisions in a recent judgment of this court (*Petrogradsky M. K. Bank* v. *National City Bank*, 253 N. Y. 23; cf. *Severnoe Securities Corp.* v. *London & Lancashire Ins. Co.*, 255 N. Y. 120). The ruling was that they were still juristic persons, and that their boards of directors, represented by a quorum, were still competent to act. The doctrine of that decision controls the case at hand. True, of course, it is that a court of equity will not decree the payment of a fund to the corporations or their officers if the situation gives notice that waste or spoliation of the assets is threatened or intended. Nothing of the kind appears. The fund will not be paid to the corporations until opportunity has been given to the creditors to enforce their demands

against the surplus by execution or attachment if they have failed to protect themselves already by filing proofs of claim. To that end the payment of the surplus may be withheld by the Superintendent for a reasonable time, say, a term of four months from the date of the judgment to be entered on this decision. Creditors who have been stayed in the enforcement of their remedies while liquidation was in progress will thus be given an opportunity to obtain protecting liens without precipitate haste or unseemly competition. Not till then will the fund reach the hands of the directors. The creditors having been paid or their claims adequately secured, what is left will be held to the uses of the corporate business, and, on the final distribution, for the benefit of shareholders.

The number of shares outstanding differs for the several companies. For the Russian Reinsurance Company the number is 12,000. Of these, 8,000 are represented by powers of attorney now held by the directors. The shares not so represented belong for the most part to shareholders in Russia, who have submitted willingly or unwillingly to the communistic order. The chance is at best remote that they will ever be heard from to claim the shares as theirs. For the First Russian Insurance Company, 3,700 shares out of a total of 10,000 are controlled by the directors through powers of attorney, the remainder again belonging to residents of Russia.

In such circumstances the problem confronting the directors after payment of the creditors, presents, one would suppose, no insuperable difficulties. They should be able, if well advised, to invest the corporate surplus, or otherwise dispose of it, in ways that will be just and equitable to all the interests affected. Whether distribution can be made without the consent of the missing shareholders, or in any event without notice, actual or constructive, we do not attempt to say. Possibly the directors will be under a duty to hold the assets undistributed for a future of indefinite duration. It is no part

of our duty to instruct them. What is certain at any rate is this, that the directors, supported as they are by a large proportion of the shareholders, are as well qualified to deal with the troublesome problem sensibly and fairly as the Superintendent of Insurance or indeed as any one else.

The State of New York is not charged with a duty to wind up the business of these Russian corporations. In aid of domestic creditors, it winds up a branch of such a business conducted within its borders and in submission to its laws (*Matter of People* [*Norske Lloyd Ins. Co.*], 242 N. Y. 148). This done, its duty ends except to turn the surplus over to a competent custodian (Insurance Law, § 63). We do not say that the refusal to go farther has its origin in what is strictly a defect of jurisdiction. In this instance, at all events, there are considerations of convenience and efficiency that may be accepted as decisive, irrespective of the scope of power (see the cases collated in 44 Harvard Law Review, 437, 439, and cf. *Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259, 264). Russian directors, chosen by Russian shareholders in accordance with Russian law, must work out for themselves their problems of internal management. The surplus assets in this State are but a part of the total assets to be administered abroad. We disclaim a continuing duty of visitation and supervision. Fraud will indeed be checked, if fraud becomes apparent. This is far from saying that competent custodians will be divested of their custody, and their powers taken over by the agencies of government. Least of all will this be done on the mere motion of the government, unprompted by any creditor, or by the owner, legal or equitable, of any interest in the business. We think the time is now at hand when the responsibility for the management of these foreign corporations should go back to the managing officers appointed by the shareholders. Our administrative machinery should be no longer clogged, our

liquidator no longer burdened, our courts no longer vexed, with problems not our own.

The orders of the Appellate Division and those of the Special Term should be reversed, and orders entered dissolving the injunction and directing the transfer of the surplus in accordance with this opinion.

The form of the orders may be settled upon notice.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.