## ROGERS v. GUARANTY TRUST CO. OF NEW YORK et al.

## SAME v. AMERICAN TOBACCO CO. et al.

District Court, S. D. New York.

Feb. 16, 1932.

Richard Reid Rogers, of New York City, pro se.

Chadbourne, Stanchfield & Levy, of New York City, for defendants Hill, Riggio, Harvie, Boylan, and American Tobacco Co.

William M. Parke, of New York City, for defendant Taylor.

Victor J. Dowling, Louis S. Levy, George W. Whiteside, and J. Arthur Leve, all of New York City, and J. Edward Ashmead and Merritt Lane, both of Newark, N. J., of counsel, for defendants Hill and others.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City, for defendants Guaranty Trust Co., and Parker.

PATTERSON, District Judge.

This suit is brought by a stockholder of the American Tobacco Company suing in his derivative right against the company, its directors and certain trustees who hold some 56,712 shares of its common stock. The suit was commenced in the New York Supreme Court, and came here by removal proceedings. The plaintiff's object is to enjoin the distribution of the shares among the directors and others connected with the company and to obtain the cancellation of the shares. Issue having been joined, the case comes up on the plaintiff's motion to strike out four defenses pleaded by the defendants and for judgment on the pleadings.

According to the amended bill, the American Tobacco Company is a New Jersey corporation, but its principal office is in New York where the chief executives have their headquarters, the board of directors hold their meetings, and the corporate records are kept. The board of directors, at a meeting on June 25, 1930, passed a resolution declaring the advisability of increasing the number of shares of common stock and reducing the par value of each share, and also a resolution formulating and declaring advisable a plan of issuing and selling shares of common stock to employees and those actively engaged in the conduct of its business. This plan, styled the "Employees' Stock Subscription Plan," made reference to New Jersey Laws of 1920, chapter 175, p. 354 (Comp. St. Supp. N. J. § 47—183 et seq.), to the effect that a corporation may provide a plan for issuing or selling stock to those working for it and for aiding them in paying for the stock, and that to carry out the plan the directors may formulate it, pass a resolution in favor of it, and thereafter call a stockholders' meeting, the plan to become operative in case two-thirds in interest of the stockholders vote for it. The "Employees' Stock Subscription Plan" in this case recited that the board of directors might offer and allot shares for subscription to such employees and those actively engaged in the business as the president might determine, by

way of additional compensation for their services; that no one should be deemed ineligible because he was a director; and that the price of the shares should be not less than par value.

The next step in corporate sequence referred to in the amended bill was the stockholders' meeting on July 28, 1930. At this meeting more than the requisite number of each class of stockholders voted in favor of both measures recommended by the board of directors—the increase in number of shares to 6,000,000 with the reduction of par value to $25 per share, and the adoption of the "Employees' Stock Subscription Plan." At a meeting of the board of directors held on January 28, 1931, the plan was put into execution. The president submitted the names of some 529 persons and the number of shares to be allotted to each. The shares totaled 56,712. On the list of names submitted were those of all the directors, and the number of shares recommended for them was 32,770. The board thereupon passed resolutions adopting the president's report and allotting the shares for subscription to the persons named in the list at the price of $25 a share, said to be by way of additional compensation for services to be rendered for the year 1931. The shares were sold to the Guaranty Trust Company and Junius Parker as trustees for the participants, to be turned over to the latter upon payment of the price, but not prior to the close of the year 1931. The plaintiff says that, at the time when the shares were so allotted to the directors and others at $25 a share, the market value of the stock on the New York Stock Exchange was $112 a share. As soon as the plaintiff learned of the allotment, he protested to the directors and demanded that the stock issue be halted, but his protest went unheeded.

As further facts said to indicate deceit and suppression of the truth by the directors, the plaintiff sets forth in considerable detail several earlier transactions wherein it is alleged that the same directors or some of them had received large sums of money and large blocks of stock at the expense of the corporation and without disclosure to the stockholders. For present purposes, it is unnecessary to pursue this portion of the amended bill, because the plaintiff asks for no relief in this suit as to these matters. His attack is upon the "Employees' Stock Subscription Plan" and upon the shares issued under it. He charges that the entire plan is void under the act of 1920, because the directors, being then potential beneficiaries of the plan,

were not qualified to pass the original resolution recommending it, and also because the statute contemplated a plan whose benefits would be available to any and all employees, whereas this plan was only for the benefit of such persons as the president might select. As another ground of invalidity, he says that the plan, in its provision that the stock offering should serve as compensation for future services, is contrary to chapter 195 of Laws of 1917 (Comp. St. Supp. N. J. § 47—176 et seq.), which deals with the kinds of consideration for which stock of New Jersey corporations may be issued. The plaintiff also charges that the plan as carried out by the January resolutions of the board is void because it is a "fraud upon the statute," meaning presumably a perversion of the true purpose and effect of the 1920 act, and also because the stock was not first offered pro rata to the stockholders as required by chapter 318 of the Laws of 1926 (Comp. St. Supp. § 47—7 et seq.).

The relief demanded is an injunction against any further steps toward carrying out the plan, cancellation of the shares of stock issued under it, and an accounting and damages.

█ The third defense in the answer is that the matters raised in the suit involve the internal management of a foreign corporation and present questions of construction of New Jersey statutes, and that the court should for this reason decline to take jurisdiction. This is a defense in point of law arising upon the face of the bill, which may be made either by motion to dismiss or by incorporation in the answer. Equity Rule 29 (28 USCA § 723). As I am of opinion that the defendants' point is a valid one and that the suit cannot be maintained in this court, it is unnecessary to discuss any of the other points argued by counsel.

██ The general rule is that a suit having to do with the internal affairs of a corporation will not be entertained by a court sitting in another state from that in which the corporation is domiciled. The rule applies to suits brought in or removed to the federal courts as well as to suits in the state courts. Wallace v. Motor Products Corporation (C. C. A.) 25 F.(2d) 655, certiorari dismissed in 279 U. S. 859, 49 S. Ct. 417, 73 L. Ed. 999; Chicago Title & Trust Co. v. Newman (C. C. A.) 187 F. 573. It is true that in such cases there is no lack of jurisdiction in the strict sense. The disinclination of courts of equity to exercise jurisdiction is due to considerations of expediency, justice to the parties,

inability to render an effective decree, and the like. Babcock v. Farwell, 245 Ill. 14, 91 N. E. 683, 137 Am. St. Rep. 284, 19 Ann. Cas. 74; Hill v. Dealers' Credit Corporation, 102 N. J. Eq. 310, 140 A. 569; American Creosote Works v. Powell (C. C. A.) 298 F. 417; Cohn v. Mishkoff-Costlow Co., 256 N. Y. 102, 175 N. E. 529. The rule resting on foundations as broad as these, it is not easy to say in advance what cases fall under its ban. The character of the relief sought will generally be determinative. A suit to annul an election of directors of a foreign corporation will be dismissed, while a suit to compel the transfer of shares to the plaintiff on the books of the same corporation will be decided on the merits. Travis v. Knox Terpezone Co., 215 N. Y. 259, 109 N. E. 250, L. R. A. 1916A, 542, Ann. Cas. 1917A, 387. The actual situs of the corporate business and property may also play a part in certain cases. A corporation after all is only a mode of carrying on business. If the enterprise is really a local one, with practically all its activities confined to the state where suit is brought, a domicile elsewhere, purely technical, may not receive tender treatment. To remit the plaintiff to the foreign courts in cases of this type might sometimes amount to a practical denial of justice. Richardson v. Clinton Wall Trunk Co., 181 Mass. 580, 64 N. E. 400; Corry v. Barre Granite & Quarry Co., 91 Vt. 413, 101 A. 38; Cunliffe v. Consumers' Association, 280 Pa. 263, 124 A. 501, 32 A. L. R. 1348.

Where the suit is to restrain the issuance of shares or to cancel shares already issued by a foreign corporation, jurisdiction is generally declined. Gregory v. New York, etc., R. Co., 40 N. J. Eq. 38; Wilkins v. Thorne, 60 Md. 253; Kimball v. St. Louis, etc., R. Co., 157 Mass. 7, 31 N. E. 697, 698, 34 Am. St. Rep. 250; Sprague v. Universal Voting Machine Co., 134 Ill. App. 379; Boyette v. Preston Motors Corporation, 206 Ala. 240, 89 So. 746, 18 A. L. R. 1376. See, also, Guilford v. Western Union Telegraph Co., 59 Minn. 332, 340, 61 N. W. 324, 50 Am. St. Rep. 407; Babcock v. Farwell, 245 Ill. 14, 34, 91 N. E. 683, 137 Am. St. Rep. 284, 19 Ann. Cas. 74. Jurisdiction was not declined in American Creosote Works v. Powell, supra, where the corporation was nonresident only in that it was created by another state, and where there was apparently no controversy as to what the law of the foreign state was. See, also, Ernst v. Rutherford & B. S. Gas. Co., 38 App. Div. 388, 56 N. Y. S. 403. But more frequently the expediency of having the legality of an issue of stock determined by

the courts of the corporate domicile has led to a dismissal of the suit. In Kimball v. St. Louis, etc., Ry. Co., supra, stockholders of a Missouri corporation asked the Massachusetts courts to enjoin a proposed issue of bonds by the corporation. In dismissing the bill, Mr. Justice Holmes said: "But it seems to us clear that, as among the states of this Union, the plaintiffs ought to resort in the first instance to that court which alone can declare the law of the case with authority, and can compel obedience to it by force. It would be a misuse of our powers to attempt to control the action of those courts, in a case like this, by an adjudication which would depend upon them for enforcement, and which they might say had mistaken the Missouri law."

In the present case, the validity of the shares sought to be canceled depends primarily upon the interpretation and effect of the act of 1920. The directors cited this statute as their authority for the plan when they formulated it, and have all along insisted that the plan is in conformity with the statute. The plaintiff takes the position that the statute is not applicable and has been used by the directors merely as a cover for a raid upon the corporate treasury for their own profit. In addition, plaintiff submits that two other statutes, that of 1917 and that of 1926, must be taken as limiting the operation of the 1920 act. It is obvious that the case presents not merely questions of fact, but questions of some complexity under the New Jersey laws. There seem to be no decisions of the New Jersey courts to serve as a guide in the proper construction and possible interrelation of these statutes. The legality of the corporate proceedings which resulted in the issuance of this stock is peculiarly a matter for determination in the first instance by the New Jersey courts.

It may be noted that the American Tobacco Company is not a local enterprise. While its chief office is said to be here and it unquestionably carries on business here, its activities are known to be world-wide. It has a New Jersey charter; it refers to the New Jersey office as its principal office; it holds its stockholders' meetings there. It is not a resident corporation in any sense of the word.

The plaintiff points out that in a proceeding last year in the New York courts he sought and obtained, over the company's strenuous opposition, an order allowing him to examine the corporate books and records, that the higher courts affirmed the order, and that one of the grounds relied upon by the

company to defeat him was that it was a foreign corporation. The company's resistance to that proceeding would seem ill-advised, and I concur with everything stated in the able opinion of Mr. Justice Townley in that case.[1] A stockholder acting in good faith has the right to inspect books and records kept in the state by a foreign corporation doing business here. There is no interference with the internal affairs of the company; no substantive rights of the stockholder or of any one else are adjudicated in such a proceeding. But this does not mean that the New York courts would accept jurisdiction of a suit like the present one, to cancel shares of stock issued by a foreign corporation where the validity of the shares turns upon the construction and effect of the laws of the corporate domicile. From recent cases in the Court of Appeals, the indications are that such a suit would not be entertained. Sauerbrunn v. Hartford Life Insurance Co., 220 N. Y. 363, 115 N. E. 1001; Powell v. United Association of Plumbers & Steamfitters, 240 N. Y. 616, 148 N. E. 728; Matter of People (Russian Reinsurance Co.), 255 N. Y. 415, 175 N. E. 114; Cohn v. Mishkoff-Costlow Co., supra.

The plaintiff's motion searches the record. Cheatham v. Wheeling & L. E. R. Co. (D. C.) 37 F.(2d) 593. Since a search of the record reveals that the cause of action set forth in the amended bill is one of which this court should decline jurisdiction, the suit must be dismissed. The dismissal, being on the ground that the court will not take jurisdiction of the case, will be without prejudice to the plaintiff's enforcement of his rights in a proper court.

---

[1] 143 Misc. 306, 257 N. Y. S. 321, affirmed 233 App. Div. 708, 249 N. Y. S. 993.